FLEMING and others *v.* ANDREWS, Assignee, etc.

*(Circuit Court, D. Indiana.  ——, 1880.)*

1. BANKRUPTCY—CONSPIRACY—ILLEGAL PREFERENCE.—The creditor of a bankrupt cannot obtain a preference of his debt by purchasing the property of the bankrupt through the intervention of an agent, and tendering the notes of the bankrupt in payment for the same.

2. SAME—ACTION BY ASSIGNEE—SET-OFF.—In an action by the assignee to recover the value of such property, the creditor cannot set off the notes of the bankrupt.

In Bankruptcy.   Appeal from the district court.

*Baker, Hord & Hendricks* and *Ayres & Brown,* for plaintiffs.

*Chapman & Hammond,* for defendant.

DRUMMOND, C. J.   The declaration was originally filed upon the theory that the bankrupt, Williamson, and the defendants, to whom Williamson was indebted, had made an arrangment, in violation of the bankrupt law, in consequence of which the defendants had obtained an illegal preference of the debt which they had against him.   Demurrers were interposed in the district court to the various paragraphs in the complaint, and, as the result of the action of the court, amendments were made by the complainant, upon all of which, finally, the defendants went to trial on the issues formed. The cause was submitted to the district court without the intervention of a jury, and the court found against the defendants.

The facts of the case, as they appear upon the record and in the bill of exceptions, seem to be substantially these:

Williamson, the bankrupt, had become insolvent, but had in his possession and control forty-four car loads of coal. The defendants, knowing his condition, or having reason to believe that he was insolvent, and with a view of causing a portion of the debt which Williamson owed them to be paid, made an arrangement with C. G. Stewart & Co., by which the latter were to purchase of Williamson this coal, or pretend to purchase it, and payment to be made in cash in 30 days; but that C. G. Stewart & Co. were to have transferred

to them the notes which the defendants had against Williamson, and Stewart & Co. were to tender payment, not in cash, as they had promised, but in the notes which the defendants held against the bankrupt. This was a scheme resorted to by the defendants, and to which C. G. Stewart & Co. were parties, to enable the former to obtain a payment *pro tanto* of the debt which was due to them from the bankrupt. The question is whether it can prevail. I think it cannot, and in this I agree with the district court. All of the counts or paragraphs in the complaint, except one, proceed upon the hypothesis that the bankrupt was a party to this conspiracy, but the evidence showed that he sold the coal in good faith to C. G. Stewart & Co., having no knowledge whatever that they were acting as the agents of the defendants, or that the defendants had anything to do with the purchase. He expected to receive payment for the coal in 30 days, according to the promise of C. G. Stewart & Co., but when they tendered to him his own notes, held by the defendant, he refused to take them. Most of the paragraphs in the complaint, being founded upon the connivance and participation of the bankrupt in this scheme, necessarily fail, as there was no evidence tending to show the bankrupt had any agency in the arrangement.

The amendment to the fourth paragraph of the complaint sets forth substantially the facts as I have stated them; that is to say, the arrangement made between the defendants and C. G. Stewart & Co., and the purpose of both parties, but not claiming that the bankrupt had any part in it, but simply that he was used by the defendants and C. G. Stewart & Co. for the purpose named.

Can such a trick as this, under the circumstances, be successful? And can the property which belonged to the bankrupt, and which now really belongs to his creditors, be held by the defendants, and they thus obtain a preference of their own debt, as against the other creditors of the bankrupt? I think not. To suffer it, would be tendering a premium for tricks of this kind, and would be a reproach to the law; especially, would it be a reproach to the bankrupt law. But it is

said, and the bill of exceptions so states, that the case was argued before the district court upon the assumption that the bankrupt was himself a party to the arrangement, and that it was not until the argument in court was closed, and the printed or written argument was left with the judge, that the ground was taken stated in the fourth amended paragraph, by which it was claimed the assignee was entitled to recover because C. G. Stewart & Co. were the agents of the defendants. But can it make any difference in the rights of the parties at what particular stage of the proceedings, before the judgment was actually rendered, that a different phase was given to the case on the part of the plaintiff from that which existed at the time of the original argument? Clearly not. The case having been submitted to the court without the intervention of a jury, it was under the complete control of the court, and if, upon the pleadings and evidence, the plaintiff was entitled to recover, it was the duty of the court to give effect to that right, whatever view might have been taken of the case by the counsel at the time of the original argument. So I think there can be no question of the right of the court to place the case upon a different ground from that upon which it was placed by the counsel originally. Therefore, the only question is whether the fourth amended paragraph presents a valid case upon which there could be a recovery for the value of the goods, for the reason that C. G. Stewart & Co. were the agents of the defendants in the purchase from the bankrupt.

It is to be observed that some of the objections which are now made to this paragraph were not made at all in the court below; for instance, it is said now that there is no allegation as to the precise value, or, indeed, as to any value, of the forty-four car loads of coal.

It is true, if we considered each paragraph in the nature of a separate count, which is to be sufficient in itself, it might not be of any avail that the other paragraphs of the complaint successively state what was the value of the coal, and what was the price agreed upon between the bankrupt and C. G. Stewart & Co. But I do not feel inclined to

regard with much favor an objection of this kind, made for the first time in the appellate court. It proceeds to detail the facts substantially as they turned out in the proof, and then it declares: "Wherefore, the plaintiff, as such assignee, demands judgment against said defendants in the sum of $2,000, and he prays for all other proper relief," etc.

Now, the proof shows beyond all question what the value of this coal was—

*By Mr. Ayers,* (interrupting:) May it please your honor, it does not show it in the bill of exceptions.

*The Court:* I take it for granted it was shown, because of the finding of the court. I will not assume, in the absence of an allegation to the contrary in the bill of exceptions, that there was not evidence tending to prove what was the value of the coal; and if that was shown, as I infer it was, then it justifies the finding of the court.

It is claimed, that in consequence of the action of the court, the defendants were deprived of the right which they had in law, viz.: to set off the notes or claims which they had against the bankrupt in this suit, by his assignee. One answer to that may be, when it was insisted on the part of the assignee that he was entitled to recover upon the fourth amended paragraph of the complaint alone, that then it should have been claimed by the defendants that they had the right, if the plaintiff rested upon that part of the complaint, to introduce the set-off. It is said also, in reply, that the whole case proceeds upon the ground of tort, and not of contract, and therefore a set-off was not a proper defence to interpose. The fourth amended paragraph of the complaint does not proceed entirely upon the ground of contract; certainly, not so far as the defendants are concerned. They committed what may be properly considered a tort, and a serious one. That is one answer to be made. And another, and a conclusive one, I think, is that it was not competent, under the facts of this case, for these defendants to interpose such a defence to this action. A court of justice ought not to tolerate such a defence, under the circumstances, and thus enable these defendants

to avail themselves of the trick to which they resorted to obtain a preference over other creditors of the bankrupt.

If I were satisfied that the defendants were unjustly and illegally deprived of any defence they had, I should feel inclined to reverse the judgment of the district court, and allow that defence to prevail. But I am clearly of the opinion that the defendants could not be permitted, with such facts as these before the court, to set up such a defence. So, on the whole, it seems to me, leaving out of view all other questions in the case, and putting it only on the ground that justice has been done between these parties, that the judgment of the district court ought to be affirmed.

And it is, accordingly, affirmed.